# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RIHAN SHINWARI,            :        Case No. 3:26-cv-514(VDO)
     Plaintiff,               :

                                 :

v.                            :

                                 :

MARKWAYNE MULLIN et al.,      :
     Defendants.             :        April 10, 2026

## RESPONSE TO COURT ORDER RE: JURISDICTION (ECF 19)
## AND MOTION TO TRANSFER CASE

Binding case law provides that "[f]or 'core habeas petitions,'" like this one,

"'jurisdiction lies in only one district: the district of confinement.'" Trump v. J. G. G.,

604 U.S. 670, 672 (2025) (quoting Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004)).

There is no genuine issue of fact in this case that when the habeas petition was filed at

12:26 p.m. on April 6, 2026, the petitioner was in Massachusetts in transit to his

designated detention facility, the Plymouth County Correctional Facility ("PCCF").

Because at the time the petition was filed, the petitioner was physically located in

Massachusetts en route to a detention facility in Massachusetts, where he remains today,

the "one district" in which habeas jurisdiction lies is the District of Massachusetts.

Pursuant to the court's April 9, 2026 order (ECF 19), the respondents respectfully

contend that this court lacks jurisdiction over this case because the District of

Connecticut is not the "one district" with habeas jurisdiction over this matter; and they

respectfully move the court to transfer this matter to the District of Massachusetts.[1]

---

[1]This filing is supported by the April 10, 2026 Declarations of Anika Beaumont and Jorge Cruz, as well as the exhibits attached to this response.

## I.    Factual Background

The facts of the timing of the petitioner's transfer from Hartford to PCCF do not genuinely appear to be in dispute.  At least, the respondents are not aware of any non-speculative basis for the contention that the petitioner remained in Connecticut at the time he filed his habeas petition.  As set forth below, all available evidence indicates that the petitioner was in the District of Massachusetts at the time of filing.

Following his arrest "[o]n April 6, 2026, at approximately 9:30 am EST, Petitioner arrived at the ICE sub-office in Hartford."  (Beaumont Decl. ¶10.)  On the same date, ICE transported the petitioner to PCCF by vehicle; for that task, "ICE used a two-person transport team consisting of deportation officers including Officer Jorge Cruz who was a passenger on the team."  (Id. ¶10; Cruz Decl. ¶5.)  The petitioner, with the transport team, "departed the ICE office in Hartford at approximately 11:00 am EST."[2] (Beaumont Decl. ¶11; Cruz Decl. ¶6; see also Ex. A.)  The transport team, along with the

_____

[2]In an attempt to verify the details of the timing of the petitioner's departure from ICE's offices in the Ribicoff Federal Building in Hartford, the undersigned asked the Federal Protective Service to pull surveillance footage from around the time ICE had indicated they departed with the petitioner.  FPS provided security footage to the undersigned that showed the petitioner's departure, but the footage lacked a time stamp. As a result, the undersigned sought and was granted permission to view the security footage at FPS offices, which allowed the timing to be confirmed, though the time stamps applied to the video were an hour behind, apparently because the clocks had not been reset following the beginning of daylight savings time.  After cross-referencing the video to the timing of events known to the undersigned, and confirming that the clock was an hour behind the actual time, the undersigned's notes reflect that ICE's vehicle carrying the petitioner departed the building at 11:14 a.m.

Because the video obtained by the undersigned does not have time stamps, to the extent that the court seeks to verify the timing for itself, that likely would have to happen in coordination with FPS.

petitioner, crossed the Connecticut border into Massachusetts at 11:49 a.m.; that crossing was documented by a contemporaneous text message from Officer Cruz. (Beaumont Decl. ¶12; Cruz Decl. ¶7; see also Ex. B.)

At 12:25 p.m., counsel for the petitioner telephoned the undersigned to inform him of the arrest and the forthcoming habeas petition. Counsel for the petitioner appears to have filed the habeas petition while on the phone with the undersigned, and according to information obtained from counsel for the petitioner, the petition was electronically filed with the court at 12:26 p.m. The transport team, along with the petitioner, arrived at PCCF at approximately 1:15 p.m.; that arrival also was documented by a contemporaneous text message from Officer Cruz. (Beaumont Decl. ¶13; Cruz Decl. ¶8; see also Ex. C.) PCCF records indicate that the petitioner was booked into that facility at 1:22 p.m.[3] (See Ex. D.) At 4:07 p.m., the undersigned notified counsel for the petitioner of the petitioner's arrival at PCCF. The petitioner has remained in detention at PCCF since his arrival.

## II. Argument

An action that challenges the validity of an individual's detention "falls within the 'core' of the writ of habeas corpus and thus must be brought in habeas." J.G.G., 604 U.S. at 672. Here, the petitioner challenges the validity of his ongoing detention, seeking a declaration that his "detention is unlawful" and the issuance of a "Writ of Habeas Corpus

---

[3]The reported timing of the petitioner's transport to PCCF corresponds with the departure of the transport team as viewed on the relevant security footage by the undersigned. Specifically, per Google Maps, the trip from ICE's offices in Hartford to the border is approximately 35 minutes, and the entire trip to PCCF is approximately two hours and seven minutes.

ordering Respondents to release Petitioner immediately."[4] (ECF 1, at 15.)  Therefore, this action "must be brought in habeas" and is subject to the jurisdictional limits applicable to habeas actions.[5]  J.G.G., 604 U.S. at 672.

As noted above, "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."  J. G. G., 604 U.S. at 672 (quoting Padilla, 542 U.S. at 443).  And here, again as discussed above, there is no meaningful dispute that the petitioner was located in the District of Massachusetts at 12:26 p.m., when the habeas petition was filed.  There also is no dispute that the petitioner was in transit in Massachusetts to his detention facility in Plymouth, Massachusetts.  It appears that the petitioner will argue that the fact of his in-transit status compels something other than the straightforward conclusion that his district of confinement at the time of filing – and therefore the "one district" where the petition properly is filed – is the District of Massachusetts.  The petitioner is wrong, and a Second Circuit panel recently explained why.

In Ozturk v. Hyde, the Second Circuit was faced with an appellate motion to stay a district court order requiring the transport of the habeas petitioner in that case from Louisiana (where the petitioner had been eventually transferred for detention) to the District of Vermont (where the petitioner was in custody, in transit, when the habeas

---

[4]As alternative, relief, the petitioner seeks an order from the court requiring that he be provided a bond hearing within seven days.  (ECF 1, at 15.)

[5]These jurisdictional rules are "not jurisdictional in the sense of a limitation on subject-matter jurisdiction, but rather akin to 'personal jurisdiction or venue.'" Padilla, 542 U.S. at 451 (Kennedy, J. concurring).

petition was filed). <u>Ozturk v. Hyde</u>, 136 F.4th 382, 387 (2d Cir. 2025). In that case, the Government challenged habeas jurisdiction in the District of Vermont, but the court concluded Vermont likely was the proper district for habeas purposes "because, at the time she filed, she was physically in Vermont and her immediate custodian was unknown." <u>Id.</u>

In reaching that conclusion, the <u>Ozturk</u> court began with the well-established jurisdictional rules that "for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian." <u>Id.</u> at 390; <u>see also</u> <u>id.</u> ("Generally, '[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States,' he must file the petition in the district of confinement and name his immediate custodian as the respondent" (quoting <u>Padilla</u>, 542 U.S. at 447)). Moreover, the panel observed (and the undersigned apologizes for the repetition) that "[t]he Supreme Court has made clear 'the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.'" <u>Id.</u> at 391 (quoting <u>Padilla</u>, 542 U.S. at 443)).

With those underlying principles in mind, the <u>Ozturk</u> court straightforwardly applied them, just as the court should apply them in this case. Specifically, the <u>Ozturk</u> panel concluded that "[a]t the time the petition was filed, that 'one district' was the District of Vermont, where Öztürk was in transit to an ICE facility for the night." <u>Id.</u> at 391. The panel went on to note that "Vermont is therefore the ***only*** district in which the

petition could have been brought at the time it was filed, and thus the ***only*** district to which it could be transferred." Id. (emphasis in original).

Put succinctly, Ozturk is an in-transit case, it is a case involving either an unknown custodian or a supervisory official (see id. at 393), and it is a case where the habeas petition was filed in the petitioner's "last known location" after her counsel's reasonable efforts to ascertain the petitioner's location (see id. at 390-91). Nevertheless, despite the petitioner in Ozturk being in transit within the District of Vermont, though not yet arriving at her detention facility within that district, despite the uncertainties of the immediate custodian,[6] and despite the petition having been filed in the district where the petitioner was last known to be detained, the Ozturk court concluded that the District of Vermont, where the petitioner was (unbeknownst to her lawyer) in transit, was "the ***only*** district in which the petition could have been brought at the time it was filed." Id. at 391 (emphasis in original); see also Dvortsin v. Noem, No. 25-CV-01741-NYW, 2025 WL 1751968, at *4 (D. Colo. June 12, 2025) ("it does not matter for this analysis that Ms. El Gamal and her children were in transit, and had not been booked into Dilley, at the moment the Petition was filed").

This court should reach the same conclusion. There is no genuine issue of fact that the petitioner was in Massachusetts, in transit, at the time the habeas petition here

---

[6]Certain of the cases that apparently will be cited by the petitioner involve application of the "unknown custodian" exception to the general "immediate custodian" rule. But that rule is an analytically separate rule from the district-of-confinement rule, as evidenced by the Supreme Court in Padilla, as well as the court in Ozturk, discussing them separately. The respondents do not in this case challenge that the court lacks habeas jurisdiction because the petitioner did not name his immediate custodian as respondent.

was filed.  Neither the petitioner's in-transit status, nor the identity of his custodian, nor the knowledge of his counsel change the analysis set forth in Ozturk: the District of Massachusetts is the "one district," and therefore "the ***only*** district" where the habeas petition in this case properly is adjudicated.

Given the straightforward nature of that analysis, the respondents expect that the petitioner will attempt to rely on Justice Kennedy's concurrence in Padilla proposing two exceptions to the district-of-confinement rule: where "there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention." Padilla, 542 U.S. at 454 (Kennedy, J., concurring).  But even if "Justice Kennedy's exceptions are good law," the petitioner's "attempts to invoke them fall short."  Khalil v. Joyce, 771 F. Supp. 3d 268, 282 (S.D.N.Y. 2025).

Specifically, as in Khalil, the petitioner here "does not allege any facts giving rise to the plausible inference that the Government's 'purpose' in moving him to [Massachusetts] was 'to make it difficult for his lawyer to know where the habeas petition should be filed.'"  Id. at 283 (quoting Padilla, 542 U.S. at 454).  To the contrary, the evidence in the record indicates that "[t]he ICE Field Office in Hartford, Connecticut, processes arrestees and is not a detention facility"; indeed, "[t]here are no ICE detention facilities in Connecticut," and "[a]s such, standard operating procedures for Connecticut arrestees require transferring arrestees to a detention facility outside of the district." (Beaumont Decl. ¶4; see also id. ¶15 ("Petitioner's transfer was conducted as part of

standard ICE operations to advance the agency's mission, optimize bedspace

management, and because there are no ICE detention facilities located within

Connecticut."). Moreover, ICE's typical practices in Connecticut are well known to the

petitioner's counsel, an experienced immigration attorney in this district, who surely did

not expect the petitioner to be detained for long in Connecticut, where there are no

detention facilities to hold him. In sum, a single transfer from Connecticut to

Massachusetts that is consistent with ICE's past practice cannot plausibly form the basis

for a finding of bad faith or some nefarious purpose on the part of ICE.

Second, even if the second exception were to apply, it is not satisfied here. The

question, if it did apply, is "whether the Government was insufficiently forthcoming as

to" the location of the petitioner's detention in Massachusetts. Khalil, 771 F. Supp. 3d at

285. The petitioner cannot plausibly allege that fact either, since habeas counsel was

informed of the petitioner's arrival at PCCF – where he remains today – just a few hours

after his transfer.[7] Moreover, the charging instrument pertaining to the petitioner's

immigration proceedings bears the address of PCCF and sets the location for the

petitioner's immigration proceedings in Massachusetts. There was never an effort to

conceal the location of the petitioner's transfer, and he cannot plausibly claim otherwise.

In sum, the petitioner's transfer to Massachusetts was in the ordinary course,

consistent with ICE practice in this district, and was promptly disclosed to counsel for the

petitioner. As in Khalil, the proposed Padilla exceptions do not apply even if good law,

---

[7]It also is the recollection of the undersigned that the ICE detainee locator updated the petitioner's location sometime on April 6, 2026, but the undersigned unfortunately did not take a specific note of when that may have been.

and the case properly should be transferred to the District of Massachusetts, "the one and only district in which he could have filed [his habeas claims] when he did." Khalil, 771 F. Supp. 3d at 290; see also Khalil v. President, United States, 164 F.4th 259, 269 (3d Cir. 2026) ("Everyone agrees that the petition was filed in the Southern District of New York while Khalil was detained in New Jersey. So when it was filed, the only district where it could have properly been brought under 28 U.S.C. § 2241(a) was the District of New Jersey" (emphasis in original)).

**III.     Conclusion**

Straightforward application of Supreme Court and Second Circuit case law provides that the only district with jurisdiction over the habeas petition in this case is the District of Massachusetts. It is genuinely undisputed that the petitioner was physically located in Massachusetts at the time the petition was filed, and there is no indication whatsoever that the petitioner's transfer to Massachusetts was in any way designed to thwart jurisdiction. There is no immigration detention in this district, and standard ICE procedure for Connecticut arrestees involves their transfer to other districts, frequently Massachusetts. At no point did ICE ever attempt to hide the location of the petitioner, and there never was a moment where the habeas petition could be filed in no district at all; rather, had the petition been filed while the petitioner was still in Connecticut, jurisdiction would lie here, but since it was filed while he was in Massachusetts, jurisdiction lies there.[8]

---

[8]Certain other cases highlighted by the petitioner grapple with the district of confinement when the petitioner is in transit in an airplane. Cf. Tacuri ex rel. Guanoluisa v. Francis, No. 25-CV-07012 (JAV), 2025 WL 3459377 (S.D.N.Y. Dec. 2, 2025);

Because for district-of-confinement purposes, the proper district with habeas jurisdiction is the "one district" where the petitioner is physically located, a finding that the habeas petition in this case properly may be decided in this district logically means that the habeas petition properly <u>could not</u> have been filed in the District of Massachusetts. That simply cannot be the case for an individual physically located in the District of Massachusetts at the time of filing who is on the way to long-term detention in the District of Massachusetts. This matter should be transferred.

Respectfully submitted,

David X. Sullivan
United States Attorney

  /s/
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T: (860) 947-1101
F: (860) 760-7979
john.larson@usdoj.gov

---

<u>Munoz-Saucedo v. Pittman</u>, 789 F. Supp. 3d 387, 394 (D.N.J. 2025). That obviously is not the case here, where the petitioner physically crossed from one district into another on the ground, clearly delineating the jurisdictional boundaries at issue. Like the petitioner in <u>Ozturk</u>, who crossed from Massachusetts, to New Hampshire, to Vermont, there always was only one district where the habeas petition could be filed: where the petitioner was physically located at the relevant time.